**LICHTER, Plaintiff, v. LAND TITLE GUARANTEE & TRUST COMPANY et, Defendants.**

Common Pleas Court, Franklin County.

No. 188523.   Decided November 14, 1955.

## OPINION

By LEACH, J.

**HEARD ON MOTION OF PLAINTIFF FOR LEAVE TO FILE AMENDED PETITION.**

In our decision of July 6th, 1955, we sustained the several demurrers of the several defendants and ordered that the petition be dismissed at the costs of the plaintiff, expressing the opinion that from the very nature of the issues here involved, it would be impossible to file an amended petition on behalf of this defendant in the capacities in which he sues which would state a cause of action.

On July 25, 1955, plaintiff filed a motion for leave to amend the first cause of action set forth in his amended petition by adding certain language to paragraph 16-a thereof.

16-a of the petition now on file reads as follows:

"a. Sec. 5537.12 R. C. (formerly §1213 GC) limits the restrictions which said trust agreement may place upon the individual right of action by Turnpike bondholders to those which are customary in trust agreements or trust indentures securing bonds or debentures of corporations."

The language sought to be added to paragraph 16-a is as follows:

"Trust agreements or trust indentures securing bonds or debentures of corporations customarily restrict the individual right of action by bondholders only regarding suits for the foreclosure of the indenture in question, or for actions upon or in respect to the indenture or for actions which affect, disturb or prejudice the lien of the indenture in question. Such trust agreements do not customarily restrict bondholders from the enforcement of ordinary equitable rights under the common law to protect the trust res equitably and ratably for the benefit of all bondholders. To the extent that said Section 807 purports to restrict the rights of Turnpike bondholders to 'enforce any right . . . under . . . the laws of Ohio' it is more restrictive than such customary indentures."

Memorandum in support of such motion has been filed by the plaintiff and briefs in opposition thereto have been filed by all defendants. An oral hearing at which all parties were represented by counsel also was held on August 15, 1955.

In our decision of July 6, 1955, at page 12, with reference to paragraph 16-a, we stated that such paragraph contained no allegation of fact which could be construed as indicating that the trust agreement in any way violated the provisions of §5537.12 R. C. Plaintiff asserts that the proposed amendment would contain such an allegation of fact.

All parties are in agreement as to the fact that after a demurrer is sustained to a petition an amended petition cannot be filed as a matter of right, that leave to file such an amended petition must be sought and that the matter is one resting in the sound discretion of the Court.

Sec. 2309.60 R. C., provides as follows:

"If a demurrer is sustained, the adverse party may amend if the defect thus can be remedied, with or without costs as the court directs. * * *"

Thus the issue presented to the Court at this time is whether the

proposed amendment would remedy the defect in the petition now on file. Stated another way, would a petition so amended be subject to the same demurrers sustained in our decision of July 6, 1955, as to the petition now on file? If so, it would follow that the "defect" is not "remedied" within the purview of the language of §2309.60 R. C., and that such leave to file an amended petition should be denied.

Defendants contend that the proposed new language is no different in legal effect than language contained in the original petition stating that "The provisions of said section 807 of said Trust Agreement are greatly more restrictive than is so customary," language ordered stricken by another Branch of this Court as being a conclusion of law.

This brings us to a consideration of the language of §5537.12 R. C. This statute provides that in the discretion of the Turnpike Commission any bonds may be secured by a trust agreement between the Commission and a corporated trustee and further provides:

"Any such trust agreement may set forth the rights and remedies of the bondholders and of the trustee, and **may restrict the individual right of action by bondholders as is customary in trust agreements or trust indentures securing bonds or debentures of corporations.** Such trust agreement may contain such other provisions as the commission deems reasonable and proper for the security of the bondholders."

In all of the briefs filed prior to our July 6, 1955 decision it seemed to have been assumed that this language would permit the Turnpike Commission to restrict the individual right of action of bondholders **only to the extent** that as a **factual** matter private corporations "customarily" have adopted the same type of restriction. We are now confronted with the specific question as to whether this is the correct interpretation of §5537.12 R. C.

It must be remembered that this is a separate and distinct issue from the question of whether a corporation **may lawfully** adopt such a restriction on the right of an individual bondholder to sue. This separate issue in effect has been presented by the language of paragraph 16-b of the petition, asserting that such an agreement "tends to deprive a Court of Equity of its ordinary, necessary and proper jurisdiction," and is "therefore in violation of law." This separate contention was discussed and rejected at page 12 et seq. of our prior decision.

Thus plaintiff in effect contends that even though a private corporation might lawfully adopt a restriction similar to that adopted by the Turnpike Commission, if as a matter of fact from an evidentiary standpoint, private corporations do not "customarily" adopt similar restrictions, the Turnpike Commission is without authority under §5537.12 R. C., to adopt such. After careful consideration we do not agree that this is the correct interpretation of §5537.12 R. C.

I' will be noted that the statutory language does not state that the Commission may restrict the individual right of action by bondholders "to the extent that such" is customary in trust agreements of corporations. It merely states that the Commission may restrict the individual right of action by bondholders **as is customary** in trust agreements of corporations. From a careful reading of the entire language of the section, we believe that the language "as is customary in trust agreements * * * of

corporations" is merely language of description and not of limitation.

Even if we assume, however, that such language is language of limitation, we are presented with the question of what is meant by "customary." Does it mean "customary" in the factual sense of the total number of corporations in existence (in Ohio, in the United States, or in the world) which have adopted such restrictions? If so, it would appear that the parties and the Court would be presented with an insurmountable problem from the standpoint of evidence. In a matter of the over-all importance of the Turnpike Act, we cannot conclude that the General Assembly had any such intention.

Assuming, as heretofore stated, that the language is restrictive, we believe that the word "customary" must be construed in the sense in which used as synonymous with "lawful." In other words, if corporations generally may lawfuly adopt such restrictions, it would appear that such restrictions would be "customary" whether actually adopted by a substantial number or percentage of existing corporations or not.

We conclude, therefore, that the issue attempted to be presented by the amendment of paragraph 16-a in essence is the same issue as that presented by paragraph 16-b and heretofore discussed and rejected in our decision of July 6, 1955. In that connection some reference should be made to the contention of the plaintiff that the Court has misconstrued the effect of the holding of Allan v. Moline Plow Company, 14 Fed. 2d, 912, as referred to at page 332 of our previous decision. While that case obviously is not on all-fours with the instant case, the Court therein rejected the contention that the restriction was applicable only to suits against the issuing corporation and did not apply to a creditor's bill. In support of our conclusions stated at page 332 thereof, we perhaps should make reference to the case of Dietzel v. Anger, 8 Cal. 2d, 373, 65 Pac. 2d, 803, and Meyer v. Lowry and Company, 19 N. Y. S. 2d, 835. The Dietzel case involved a suit by bondholders, not against the issuing corporation, but against stockholders to enforce proportional stockholder liability. There, as in this case, the suit did not involve the depletion of the assets of the corporation but instead an effort to increase them. Nevertheless, based upon the "no action" provision of the trust indenture, the right to sue was denied. In the Meyer case the Court pointed out that the instrument itself made no distinction between the trustee and third persons and stated that a single bondholder should not be granted the right to sue third persons and outsiders.

Incidentally it should again be pointed out that while it is difficult to conceive exactly what relief is sought by the plaintiff against Turnpike Commission, nevertheless Turnpike Commission was sued by the plaintiff as a party defendant in this case, despite the "no action" provisions of the Trust Indenture.

In the over-all consideration of this case we believe that one other aspect thereof should be discussed. In our decision of July 6, 1955, we stated that in view of the conclusions reached therein, it was not necessary to pass upon the question of whether plaintiff does or does not stand in the same legal relationship as if this suit had been brought by Turnpike Commission against Land Title for the recovery of the approximately $250,000.00, the question of whether payment made under

mistake of law can be recovered in the absence of fraud, duress, compulsion or mistake of fact and the question of whether Turnpike Commission was or was not in "pari delicto" with Land Title insofar as their contract of June 4, 1952, was concerned.

At the oral hearing counsel for plaintiff in effect conceded that in the present suit plaintiff stands in the same legal position, no better and no worse, than Turnpike Commission would stand in, had Turnpike Commission been the party plaintiff in this action. In any event we so conclude as a matter of law.

As stated in the Per Curiam opinion of the Supreme Court in **State, ex rel. Dickman v. Defenbacher, 151 Oh St 393, 395:**

"In the absence of fraud, duress, compulsion or mistake of fact, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay * * *.

"This rule is applicable to the payment of public funds to private persons by governmental authorities."

The petition contains no allegations of fact which would indicate the presence of any fraud, duress, compulsion or mistake of fact. Instead the simple issue presented is whether payment made under mistake of law can be recovered. Plaintiff contends that since such payment by Turnpike Commission to Land Title represented, in part, payment for legal services, illegally rendered by a corporation, such corporation should be punished for such activity by an order to repay the sum received. While the illegal practice of law by a corporation is not to be condoned by the courts, we conclude that the holding of the Supreme Court in State, ex rel. Dickman v. Defenbacher would preclude such recovery. To contend, as was contended by the plaintiff, that Turnpike Commission and Land Title were not in "pari delicto" is merely to state the presence of "fraud, duress or compulsion." There are no facts alleged in the petition indicating the presence of fraud, duress or compulsion and we may assume, and in fact such is alleged in the petition, that Turnpike Commission entered into the contract with its eyes wide open on the question of whether the contract might not call for the illegal practice of law by Land Title. To say that under such a situation Land Title is the sole "culprit" is to ignore the facts alleged in the petition.

For the reasons above stated, it is the opinion of the Court that a petition, amended as sought to be amended by the motion for leave to amend the amended petition filed July 25, 1955, would not state a cause of action, that the "defect" held to exist in our decision of July 6, 1955, is not "remedied" by the proposed amendment within the purview of §2309.60 R. C. Leave to so amend, therefore, is denied. Entry may be prepared accordingly.